COMMONWEALTH vs. WILLIAM E. FLORENTINO, JR.

Middlesex.  April 8, 1980. — July 24, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Homicide.  Joint Enterprise.  Evidence,* Judicial discretion, Photograph,
Relevancy and materiality, Illustrative exhibit.  *Practice, Criminal,*
Mistrial.

At the trial of a defendant charged with murder in the first degree on the-
ories of joint venture and felony-murder arising out of an armed rob-
bery, the judge did not err in permitting the Commonwealth to intro-
duce evidence concerning the joint venturer; nor was a mistrial required
because of a witness's reference to the joint venturer as "The convicted
killer," which was immediately struck by the judge. [194-196]

At a murder trial, the judge did not abuse his discretion in admitting in
evidence a color photograph of the victim which had been taken at the
morgue. [196]

At a murder trial, the judge did not err in admitting in evidence a hand-
gun described as similar to the murder weapon which had not been
recovered. [196-197]

At a murder trial, the defendant was not prejudiced by a witness's repeat-
ed use of the word "murder" in connection with the victim's death
where the judge struck the word each time it was used and advised the
witness to use a different word. [197]

INDICTMENTS found and returned in the Superior Court
on March 15, 1978.

The cases were tried before *Simons, J.*

*Paul P. Caradonna* for the defendant.

*Susan C. Mormino,* Assistant District Attorney, for the
Commonwealth.

BRAUCHER, J.  A jury found the defendant guilty of murder
in the first degree and armed robbery, and he was sentenced
to concurrent life terms.  He appeals, asserting among other
errors that he was unfairly prejudiced by the introduction of
evidence relating to his alleged joint venturer, who was
tried and convicted separately.  Finding no error and no

reason to exercise our powers under G. L. c. 278, § 33E, we affirm the convictions.

There was evidence tending to prove the following. On December 16, 1977, the defendant and William Smallwood entered Vautour's Liquor Store in Everett. Smallwood announced, "This is a holdup," and placed a .38 caliber handgun at the head of Francis Brown, a customer. The proprietor, Willard Vautour, the only other person then present, was ordered to open the cash register and the defendant removed all of the dollar bills. At that point another customer, Edward Stevens, entered the store. When Stevens failed to respond to a command from Smallwood to move to the rear of the store, Smallwood shot and killed him. The two robbers then fled from the store.

1. *Evidence relating to the joint venturer.* Alleging that it was Smallwood who actually fired the single shot which killed Stevens, the Commonwealth proceeded against the defendant on the theories of joint venture and felony-murder. Smallwood was tried separately and convicted before the defendant's trial started; the convictions were upheld on appeal. *Commonwealth* v. *Smallwood,* 379 Mass. 878 (1980).

Generally, the Commonwealth was entitled to introduce evidence of the circumstances attending the commission of the crimes charged. *Commonwealth* v. *Harris,* 376 Mass. 201, 207 (1978), and cases cited. Moreover, where a common enterprise between Smallwood and the defendant was established, the acts and declarations of Smallwood in the course of and in furtherance of the joint venture were admissible against the defendant. *Commonwealth* v. *Flynn,* 362 Mass. 455, 477 (1972). This rule applied notwithstanding the fact that the defendant was tried separately rather than jointly. *Commonwealth* v. *Dussault,* 2 Mass. App. Ct. 321, 326 (1974). To the extent that the defendant was held criminally liable for the acts of Smallwood, the result followed properly from the principles of felony murder and joint enterprise. See *Commonwealth* v. *Soares,* 377 Mass. 461, 470 (1979); *Commonwealth* v. *Ambers,* 370 Mass.

835, 838-839 (1976); *Commonwealth* v. *Lussier*, 333 Mass.
83, 94 (1955).

Thus it was not improper, and was in fact necessary, for the
Commonwealth to introduce evidence about Smallwood's ac-
tions during the robbery. The mere use of Smallwood's
name throughout the trial was a matter of convenience from
which the defendant can show no prejudice. Nor was there
any error in the admission of a single, unmarked, full-face
photograph of Smallwood, which Vautour testified was the
one he had identified in March, 1978, as the photograph of
the robber who shot and killed Stevens. Cf. *Commonwealth*
v. *Whitehead*, 379 Mass. 640, 659-660 (1980) (photograph
admissible to bolster victim's credibility as witness); *Common-
wealth* v. *Rodriguez*, 378 Mass. 296, 309 (1979) (mugshots
should have been severed and "sanitized"). Admission of
this evidence was within the judge's discretion. See *Com-
monwealth* v. *Silvia*, 343 Mass. 130, 133-135 (1961).

The Commonwealth called two police officers, one from
the Salem police department, one from the Everett police
department; each testified to an occasion when he had seen
the defendant and Smallwood together, in the company of
several other men. While both officers testified that they
were on duty on the occasions, there was no other indication
that their contacts with the defendant resulted from crimi-
nal activity on his part. We believe there was no error.
The Commonwealth had the right to show that a personal
relationship existed between the defendant and Smallwood.
*Commonwealth* v. *Balukonis*, 357 Mass. 721, 726 (1970).
See *Commonwealth* v. *Beal*, 314 Mass. 210, 227 (1943).

At one point in his testimony, when asked which of the
two robbers he made a composite drawing of, Brown replied,
"The convicted killer, Smallwood." The judge immediate-
ly said, "That may be stricken, and the jury will disregard
that answer." The defendant requested a mistrial. The
judge denied the request and gave a stringent instruction to
the jury, that they were bound by their oath to disregard
what was stricken and that "the consequences, if any, as to
the other person [allegedly involved in the robbery], . . .

have no importance and should not be considered by you."
The granting of a mistrial is within the discretion of the
judge, and we assume that the jury followed the judge's in-
struction. There was no error. *Commonwealth* v. *Clifford*,
374 Mass. 293, 298 (1978). *Commonwealth* v. *Jones*, 373
Mass. 423, 425 (1977), and cases cited.

In sum, neither individually nor in the aggregate were
the references to Smallwood unfairly prejudicial to the
defendant.

2. *Photograph of deceased.* A color photograph of the
victim's head was admitted in evidence during the testimony
of Vautour, over the defendant's objection that the photo-
graph had been "taken at the morgue, not at the scene." We
have often said that the admission of photographs of the vic-
tim is within the discretion of the trial judge. *Common-
wealth* v. *Stewart*, 375 Mass. 380, 385 (1978), and cases cit-
ed. There was no abuse of discretion here. The photograph
aided the jury in understanding the nature of the wound, and
it was later used by the pathologist to illustrate his testimony.
*Id.* There was nothing about the photograph so inflamma-
tory as to require its exclusion and nothing about its details
that could have misled the jury as to the injuries sustained.
See *Commonwealth* v. *Campbell*, 375 Mass. 308, 313-314
(1978) (photograph showing incision made in course of
medical treatment); *Commonwealth* v. *Lamoureux*, 348
Mass. 390, 392-393 (1965) (photographs taken at hospital).
"The precise order of admission of the exhibits was a mat-
ter for the judge which he did not mishandle." *Common-
wealth* v. *Cadwell*, 374 Mass. 308, 315 (1978) (photographs
of victim's body before and after autopsy).

3. *Admission of a handgun similar to the one used.* The
weapon actually used by Smallwood was never recovered.
At trial, a handgun identified by Vautour, an ex-police offi-
cer, as a long barrel police special and described by him as
similar to the weapon held by Smallwood on December 16,
1977, was admitted in evidence over the defendant's objec-
tion. Vautour used the weapon to demonstrate the sound

he heard when Smallwood cocked the gun's hammer. A witness trained in ballistics and firearms identification testified to the characteristics of the gun and stated that the gun was "consistent with" the type of weapon that fired a .38 caliber projectile recovered from the floor of the liquor store. "The admission in evidence of a gun, similar but not identical, to the alleged murder weapon was not an abuse of discretion." *Commonwealth* v. *Ellis*, 373 Mass. 1, 7 (1977). The judge instructed the jury, both upon introduction of the gun and in his final charge, that the gun was not offered nor admitted on the basis that it was the gun which had killed the victim, but that it was similar to the gun and was admitted to illustrate the testimony of Vautour. There was no error. See *Commonwealth* v. *Russell*, 2 Mass. App. Ct. 293, 297-298 (1974), quoting a similar instruction.

4. *Use of the word "murder."* Five times in the course of his direct examination, the witness Vautour used the word "murder" in reference to the shooting death of Stevens. The first three times, on the defendant's request, the judge ordered the word "murder" struck from the answer. The fourth time, the defendant requested that the word be struck and the witness advised not to use it again. The judge granted the request to strike and said, "I would refer to it some other way, the conclusion of murder is for the jury." The fifth time the judge struck the word on his own motion and instructed the jury that it was for them to decide if there was a murder and that they were to disregard the use of the word "murder" by a witness. Two questions later, the judge cautioned the witness not to use the term "murder," and the witness thereafter complied. There was no error. References to "murder," even if improper on the part of the witness, did the defendant no harm because he mainly contested whether he was present in the store, not whether the shooting death of Stevens was a murder. The judge took the proper course, first striking the word and then, when its use persisted, advising the witness to use a different, less conclusory word.

5. *Section 33E.* We have examined the entire record in accordance with our duties under G. L. c. 278, § 33E, and find no reason to grant the defendant any relief under that statute.

*Judgments affirmed.*