COMMONWEALTH *vs.* REGINA D. DiBLASIO.　February 24, 1984. *Practice, Criminal*, Severance, Required finding. *Evidence*, Cross-examination.

After a joint trial with one Albert Henson, the defendant DiBlasio was found guilty by a jury on indictments charging her with armed assault with intent to murder, G. L. c. 265, § 15, and assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A. On appeal she alleges that it was error: (1) to deny her motion for severance brought under Mass.R.Crim.P. 9(b), 378 Mass. 860 (1979); (2) to limit her cross-examination of the victim on the issue of prosecutorial inducements for his testimony; and (3) to deny her motion for a required finding of not guilty made after the Commonwealth rested and renewed at the close of all the evidence. Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979). We affirm the judgments.

The Commonwealth presented evidence from which the jury could have found the following facts. On the night and early morning in question, one Lori Newton met DiBlasio and Henson. It could be inferred that DiBlasio knew that Henson was carrying a gun, because at one point

in the evening the three had gone to an apartment where Henson discharged the firearm when an argument erupted among the occupants, DiBlasio, and Henson.

Later that night, the group was driving along Main Street in Brockton, DiBlasio behind the wheel, Henson seated in the front, and Newton in the back. DiBlasio saw the victim, whom she had known for over ten years, and pointed him out to Henson as "the guy that had jumped" her about two years past. Henson stated words to the effect that "no one was going to get away with jumping his girlfriend," and ordered DiBlasio to turn the car around.

DiBlasio thought that the victim might be walking to a lounge that she knew to be in the area. Rather than turn and drive in the wrong direction on a one-way street, she drove directly to the lounge. Upon arriving, DiBlasio went inside and then returned to the car to report to Henson that the victim was in the lounge. Henson then entered the lounge and came back to the car within a few minutes.

When the victim and another man came out and stood in the doorway of the lounge, Henson shouted, "not now, later, later," and instructed DiBlasio to drive to a parking lot across the street. She did so, and a few moments later, Henson told her to drive back, near to the victim. As DiBlasio returned to the lounge, Henson called out to the victim by name, and he walked over to the car. When the victim was just inches away from Henson, he shot him in the face.

DiBlasio drove off, and Henson discarded the gun and, aided by DiBlasio, destroyed any traces of gun powder that could have been detected on his hands. Based upon information given to the police by the victim, the pair was arrested within hours.

1. DiBlasio argues that her joint trial with Henson was prejudicial to her because the jury would be inclined to infer her guilt, the evidence of which she characterizes as insufficient (but see par. 3, *infra*), from the strong case against Henson. The Commonwealth offered evidence through numerous witnesses to show that Henson shot the victim and that DiBlasio drove the car. The trial judge's instructions on joint venture were such that "[a] jury attentive [to those instructions] would understand that the question of guilt was singular to each defendant and hung on proof of the nature of the individual's participation or lack of it in the venture." *Commonwealth* v. *Godfrey*, 15 Mass. App. Ct. 938, 939 (1983). The essence of DiBlasio's claim is no more than that she might "have had a better chance of acquittal had [s]he been tried alone." *Commonwealth* v. *Moran*, 387 Mass. 644, 659 (1982). Even were her assessment accurate, she has not shown an abuse of discretion by the trial judge in denying her motion for severance. *Id.* at 658-659. See also *Commonwealth* v. *Hogg*, 365 Mass. 290, 296 (1974); *Commonwealth* v. *Cepulonis*, 374 Mass. 487, 499 (1978).

2. DiBlasio complains that she was denied the right to show that the victim's testimony was motivated by his desire for favorable treatment by the Commonwealth on outstanding criminal charges against him. See *Commonwealth* v. *Hogan*, 379 Mass. 190, 191-192 (1979). (a) The trial judge did not deny DiBlasio the right to cross-examine the victim about a pending complaint (issued six weeks before the present incident) charging him with assault and battery by means of a dangerous weapon. The victim denied being the person charged in that complaint, and the trial judge extended to defense counsel the opportunity to establish the necessary identity, but proof of identification was not presented. (b) Although a complaint charging the victim with defrauding a lessor predated the events in question and the related offenses of armed robbery and assault and battery occurred subsequent to the attack upon the victim, all those charges against him were pending at the time of his testimony at trial. The victim immediately identified his assailants to the police, he testified against them before the grand jury prior to the date of the armed robbery and assault and battery, and his grand jury testimony was not materially different from that given at trial when he was questioned extensively and with greater specificity. At trial he was asked about and denied the existence of any promises or inducements by the Commonwealth, his credibility was impeached by the showing of what defense counsel regarded as inconsistencies between his testimony before the grand jury and at trial as well as by evidence of his prior convictions, and his testimony was materially the same as that of other witnesses for the Commonwealth. In these circumstances, we have no reason to disturb the trial judge's conclusion that further cross-examination into the pending charges against the victim would not be probative of any motive he might have to testify falsely against the defendant. See *Commonwealth* v. *Haywood*, 377 Mass. 755, 762-763 (1979). Compare *Commonwealth* v. *Lewis*, 12 Mass. App. Ct. 562, 569-573 (1981).

3. It is apparent from our recitation of the evidence that it was sufficient to enable the jury to find from the circumstances and from the conduct of Henson and DiBlasio that she possessed the requisite mental state to warrant her convictions of the crimes charged. See *Commonwealth* v. *Casale*, 381 Mass. 167, 173-175 (1980), and cases therein discussed. Assuming that the evidence was sufficient to show that her conduct was the result of duress and coercion by Henson, but see *Commonwealth* v. *Robinson*, 382 Mass. 189, 199-200 (1981), that evidence entitled her to an appropriate jury instruction, which she received, and not to a required finding of not guilty. *Ibid.* See also *Commonwealth* v. *Melzer*, 14 Mass. App. Ct. 174, 182-185 (1982).

*Judgments affirmed.*

*Paul A. Finn* for the defendant.
*Robert M. Payton*, Assistant District Attorney, for the Commonwealth.